(No. 3964—

VERNON W. KAYS, Claimant, *vs.* STATE OF ILLINOIS, Respondent

*Opinion filed May 13, 1947.*

*Supplemental Opinion filed February 14, 1949.*

HENRY L. COWLIN, Attorney for Claimant.

HON. GEORGE F. BARRETT, Attorney General, and HENRY L. MORGAN, Assistant Attorney General, for Respondent.

BERGSTROM, J.

According to report of the Division of State Police, which is part of the record, on April 16, 1945 claimant, Officer Vernon Kays, with Officer Clyde Kingsbury, were patroling the highways in a State police car while assigned to the 4:00 P.M. to 12:00 P.M. shift. Officer Kingsbury drove the car, and claimant was his riding partner. Their tour of duty would have been completed when they reached their respective homes. About midnight they were approaching Marengo from the southeast on U. S. Route No. 20. At approximately 12:10 A.M. on April 17, about two miles southeast of the City of Marengo and about 200 feet west of Union Road in the County of McHenry, a car approached them from the northeast. The approaching car continued on its side of the road until about 25 feet from the police car, when it turned left into the opposing traffic lane and toward the police car. In attempting to avoid a collision, Mr. Kingsbury swerved the police car sharply to his left; however, the approaching car veered back (right) toward its proper lane causing the cars to collide. The right front and sides of both cars bore the brunt of the collision.

Officer Kingsbury escaped with minor lacerations and bruises; however, Officer Kays' legs were crushed when the dash, which had an auxiliary radio set attached to it, was forced back against his legs and the front seat of the car. As the result of injuries received in the accident the driver of the other car, Paul Day, Marengo, on temporary leave from military service, died while being taken to the hospital.

As the police car radio had been damaged in the accident, a passing truck driver was asked to report the accident by telephone to State Police Headquarters at Elgin. About 12:55 A.M., Dr. Robert Miller, of Marengo, and an ambulance arrived at the scene of the accident. Dr. Miller supervised Mr. Kays' removal from the car to the ambulance for transportation to St. Joseph's Hospital, Belvidere, where Drs. Miller and William M. Freeman, of Belvidere, rendered emergency care.

Mr. Kays' condition grew worse during the night, and the following morning Dr. Miller called in Dr. Maurice P. Rogers, Rockford, for consultation. During the day arrangements were made for Mr. Kays' transfer to the care of Dr. H. B. Thomas, professor emeritus of orthopedics, University of Illinois Medical College, Chicago. The move was to be made as soon as Mr. Kays' condition improved sufficiently to permit the trip by ambulance. Saturday morning, April 26, Mr. Kays was transferred by ambulance from St. Joseph's Hospital, Belvidere, to St. Luke's Hospital, Chicago, and placed under the care of Dr. Thomas.

On May 2, 1945, Dr. Thomas reported that claimant had a fracture of the distal end of the left femur with puncture wound near, injury to knee and knee joint, fracture of the distal end of the tibia and fibula with a puncture wound near, bad fracture of the right distal femur,

bad over-riding not reduced. He also had a Colles's fracture and a suspicious bruise on the head.

On September 29, 1945 claimant left St. Luke's Hospital for his home in Marengo, but thereafter made periodic trips to Chicago for treatments from Dr. Thomas, and on October 29, 1946 claimant testified that he was still taking a treatment every two weeks.

At the time of the accident claimant was 42 years of age, married, and had one child, Mary Lou, under 16 years of age dependent upon him for support at the time of his injury. Another child, Vernon William, a son, was born after the accident, August 4, 1945.

Claimant was first employed by the Division of State Police on August 18, 1943, as a police officer at a salary of $185.00 a month. He continued in the same classification and at the same salary rate through April 17, 1945, the date of his injury, and earned a total of $2,220.00 in the year preceding his injury.

At the time of the injury, the employer and employee were operating under the provisions of the Workmen's Compensation Act of this State, and notice of the accident and claim for compensation were made within the time provided by the Act. The accident arose out of and in the course of claimant's employment.

The Division of Police made regular salary payments to claimant from the date of his injury, April 17, 1945 until April 1, 1946. July 1, 1945 his salary was increased to $213.00 a month. Salary payments paid to him during this period totaled $2,367.17.

Respondent also paid on behalf of claimant the following medical and hospital services:

| | |
|---|---|
| Dr. Maurice P. Rogers, Rockford.....................$ | 35.00 |
| Dr. W. M. Freeman, Belvidere...................... | 5.00 |
| Dr. H. B. Thomas, Chicago......................... | 963.00 |
| St. Luke's Hospital, Chicago........................ | 2,623.60 |

| | |
|---|---:|
| St. Joseph's Hospital, Belvidere | 229.40 |
| Rockford Memorial Hospital, Rockford | 10.00 |
| Boydston Bros., Amb., Chicago | 51.50 |
| Mrs. Otis R. Manby, R.N., Belvidere | 63.00 |
| Mrs. Nellie Etzler, R.N., Galesburg | 14.00 |
| Miss Hazel Troon, R.N., Elgin | 109.50 |
| Mrs. Constance McBride, R.N., Elgin | 77.00 |
| Mrs. Robert Traxler, R.N., Belvidere | 14.00 |
| A. M. Osborne (Amb.), Marengo | 10.00 |

$4,205.00

and, according to the record, the charges of Dr. Thomas for the treatment of claimant since July 1, 1945, and Dr. Robert Miller's bill for initial treatment remain unpaid.

Claimant claimed that he had lost approximately 67% of the use of his right knee and 98% of the use of his left knee, and testified that Dr. Thomas so advised him. This contention is not supported by any medical testimony and, from the record, the Court is unable to determine the extent of claimant's injuries.

On January 21, 1947, Henry L. Cowlin, attorney for claimant, filed a letter in this case, reading as follows:

"Enclosed find waiver which I have signed for Vernon W. Kays.

After filing his claim in the Court of Claims, Mr. Kays filed a suit in the Circuit Court under the Tavern Liability Law, against some of the tavern keepers and obtained a good settlement and he agreed that the Court of Claims should find that he had no cause of action, as the finding in his favor in the Court of Claims would simply have meant that the State would be subrogated in the other case, and while he would get paid through the Court of Claims, the money would be deducted from the settlement that he made in the other case, so to simplify matters, it was agreed, at the time we had the hearing, that the finding should be against Mr. Kays.

This will enable him to proceed with his application for pension, which he is entitled to.

Very truly yours,
HENRY L. COWLIN."

Under Section 166, Par. 29 of Chap. 48 of the statutes, Workmen's Compensation Act, where a third per-

son's negligence caused the injury the employer is subrogated to his employees rights to the extent of the compensation paid or to be paid. *O'Brien* v. *Chicago City Ry. Co.*, 305 Ill. 244.

The record shows that claimant was paid $2,367.17 for unproductive time, and that respondent paid $4,205.00 for medical and hospital services, with some medical bills remaining unpaid. Claimant admits that he obtained a good settlement, but the record does not disclose the amount. Neither does it disclose that respondent was reimbursed for the money paid on behalf of claimant under the Workmen's Compensation Act, from the amount of settlement claimant received. To the extent of compensation, paid or to be paid, respondent is subrogated to the rights of claimant against said third person or persons whose negligence caused the accident, and if claimant received settlement from such third person or persons in excess of respondent's liability under the Workmen's Compensation Act respondent cannot maintain an action against such third person or persons but must look to claimant for reimbursement. *Chicago Surface Lines, et al.* v. *Foster*, 241 I.A. 49.

The Court is making these observations so that the Attorney General may take such further action as may be indicated by a complete record of all the facts in this case.

Counsel for claimant requests this Court to make a finding against claimant, so he can proceed with his application for pension under the State Employees Retirement System. The last paragraph of Section 10 of this Act (Chapter 127, Sec. 224, Illinois Revised Statutes for 1945) states:

"Any amounts received by a member under the State Workmen's Compensation or the Occupational Diseases Acts shall be applied as an

offset to any accidental disability benefit provided for herein in such manner as is provided in rules adopted by the board."

This paragraph of the Act contemplates a determination first of claims compensable under the provisions of the Workmen's Compensation Act. Otherwise the Pension Board would not know what amount to offset against any such disability benefit. The Court of Claims has jurisdiction of claims by employees against the State for personal injuries arising out of and in the course of their employment, to be determined in accordance with the substantive provisions of the Workmen's Compensation Act, and claimant properly filed his claim with this Court for judicial determination. This, the Court has been unable to do, as the record contains insufficient evidence of the extent of claimant's incapacity. Competent medical and other evidence should be introduced to show the extent of claimant's disability. The amount received by claimant from the third persons for his injuries should also be in the record, so the respondent by its right to subrogation, can set off such an amount against any award entered by this Court. Unless this is done the Pension Board cannot, under the statute, make a proper determination of any pension claim filed by claimant under said Section 10.

This Court, on its own motion, requested claimant to submit such evidence, but claimant has failed to do so. The right of respondent to subrogation arises under the Workmen's Compensation Act. If an award was denied, as requested by claimant, he would then be in a position before the Pension Board to show that an award was denied and no compensation received. The Pension Act does not contain any right to subrogation. The State, under such circumstances, could lose its rightful offset for the amounts it has already paid on account

of this accident under the provisions of the Workmen's Compensation Act and a portion or all of its remaining liability thereunder.

Accordingly the request for a finding against claimant is denied, and jurisdiction of this cause is specifically reserved for the entry of such further orders or findings as may from time to time be necessary.

The testimony on hearing before Commissioner East was transcribed by A. M. Rothbart Court Reporting Service, who have submitted a statement of $13.80 for services. This charge is reasonable and proper.

An award is entered in favor of A. M. Rothbart Court Reporting Service for stenographic services in the amount of $13.80, which is payable forthwith.

## SUPPLEMENTAL OPINION

BERGSTROM, J.

In the original opinion filed in this case at the May 1947 term there remained for determination the question of the permanent extent of claimant's injury and the amount received in settlement by claimant for the negligence of the third party tort feasors.

Claimant was severely injured and was under medical treatment and observation from the date of the accident, April 17, 1945, until June 15, 1948. On the later date Dr. R. H. Thomas, professor emeritus of orthopedics, University of Illinois Medical College, Chicago, who had charge of the patient from the time of the accident, made his final report, as follows:

"I examined Mr. Vernon Kays this morning, June 15, 1948. You remember he came to me in April 1945. He was hospitalized seven months at St. Luke's and came to the office for treatments over a period of 12 months. He had simple fractures of both femurs, middle third; both knees were crushed (the left more severely); compound fracture

'of the lower left tibia; right wrist and right elbow fractured. He was intermittently unconscious for about 12 hours.

"Examination shows the result of femur fractures okay. The knees —full extension in both; only 6 degrees flexion on the left and 12 degrees flexion in right. He is not able to get out of a chair or sit down without the help of the chair arms. The right elbow is all right. Right wrist gives no pain but the grip is 15 per cent less than normal. Both knees show roughness on motion.

"His duty when injured was a policeman. He is totally disabled for that work at this time. He needs no treatment nor additional examinations.

"Prognosis: No more improvement is expected. The injured joints will age faster from now on than the normal joints will."

On December 9, 1948 claimant appeared before this Court for observation. After a careful consideration of the report of Dr. Thomas, the history of this case and what we could visually observe respecting his condition, we are of the opinion that for a man trained only for physical work he has suffered the permanent and complete loss of use of both of his legs as a result of this accident in accordance with Subparagraph 18 of Paragraph E of Section 8 of the Workmen's Compensation Act. He is, therefore, entitled to compensation as provided under Paragraph F of Section 8 of the Act. (1943 statute, as amended.)

At the time of the accident he was married and had one child under sixteen years of age. His earnings for the year previous to his injury amounted to $2,220.00. He is, therefore, entitled to an award computed under Section 7, Paragraphs A, H3 and L, in the sum of $5,228.75, from which must be deducted the sum of $2,367.17 paid to him for unproductive time, leaving a balance due him of $2,861.58. After payment of this compensation, he is also entitled to an annual pension for life, based on twelve (12) percent of $5,228.75, or $627.45 annually, payable in monthly installments.

However, as the record now shows that claimant received $22,000.00 in settlement for the negligence of

the third party responsible for this accident, any amount due from respondent to claimant under the Workmen's Compensation Act is properly set off against this settlement amount. Section 29 of the Act provides as follows:

"Where the injury or death for which compensation is payable under this Act was not proximately caused by the negligence of the employer or his employees and was caused under circumstances creating a legal liability for damages on the part of some person other than the employer to pay damages, such other person having elected not to be bound by this Act, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative."

An award is therefore made to claimant, Vernon W. Kays, in the sum of $2,861.58, all of which has accrued, and in addition thereto he is awarded an annual pension for life of $627.45 commencing on June 5, 1948, payable in equal monthly installments of $52.29; provided further, however, that any payments due to claimant under this award shall be set off against the sum of $22,000.00 recovered by claimant, and that no payments shall be made on this award until the amounts due hereunder shall equal said amount of $22,000.00.

All future payments being subject to the provisions of the Workmen's Compensation Act, jurisdiction is hereby specifically reserved in this case for the entry of such further order or orders as may from time to time be necessary.

This award is subject to the approval of the Governor, as provided under Section 3 of "An Act concerning the payment of compensation awards to State employees."